FILED

2025 Mar-17  AM 11:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN DAVID LINN, JR., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Case No.  1:23-cv-01520-HNJ |
| | ) | |
| SOCIAL SECURITY ADMINISTRATION, | ) | |
| COMMISSIONER, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff John David Linn, Jr., seeks judicial review pursuant to 42 U.S.C. § 405(g) of an adverse, final decision of the Commissioner of the Social Security Administration ("Commissioner"), regarding the termination of his disability insurance benefits.  The undersigned carefully considered the record, and for the reasons expressed herein, **AFFIRMS** the Commissioner's decision.[1]

## LAW AND STANDARD OF REVIEW

To qualify for disability benefits, the claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.  The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including the entry of final judgment.  (Doc. 16).

in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

If a claimant qualifies for and receives disability benefits, the Commissioner must periodically review the claimant's disability to ascertain whether the claimant remains entitled to benefits. *See* 20 C.F.R. § 404.1594(a). In determining whether a claimant continues to suffer a disability, and thus remains entitled to benefits, the Commissioner, through an Administrative Law Judge (ALJ), works through an eight-step sequential evaluation process. *See* 20 C.F.R. § 404.1594(f). The burden rests upon the Commissioner to prove the cessation of the claimant's disability. *See Imfield v. O'Malley,* No. 8:23-CV-1071-JRK, 2024 WL 4284981, at *3 (M.D. Fla. Sept. 25, 2024); *Fleck v. Colvin,* No. 5:15-CV-01293-MHH, 2016 WL 8671769, at *1 (N.D. Ala. Sept. 30, 2016).

In the first step of the eight-step sequential process, the claimant cannot be currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1594(f)(1).

At step two, the evaluator must conclude the claimant's disability continues if he or she suffers an impairment or a combination of impairments which meets or medically equals one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 1.00-114.02. *Id.* § 404.1594(f)(2).

If the claimant's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator determines at step three whether the claimant exhibits medical improvement. *Id.* § 404.1594(f)(3). Medical improvement constitutes "any decrease in the medical severity of [the claimant's] impairment(s) . . . present at the time of the most recent favorable medical decision" finding the claimant disabled. *Id.* § 404.1594(b)(1). A finding of medical improvement properly relies upon "improvement in the symptoms, signs and/or laboratory findings associated with [the claimant's] impairment(s)." *Id.* § 404.1594(b)(1).

If the claimant exhibits medical improvement, at step four the evaluator must determine whether the medical improvement increases the claimant's residual functional capacity ("RFC") to perform work. *Id.* § 404.1594(f)(4).

At step five, the evaluator will find the claimant's disability continues – subject to certain exceptions[2] – if the claimant fails to exhibit medical improvement, or if the

---

[2] Pursuant to § 404.1594(e), the evaluator will find the claimant not disabled if: (1) "any prior favorable decision was obtained by fraud"; (2) "without good cause," the claimant fails to provide requested "medical or other evidence or to go for a physical or mental examination by a certain date"; (3) the Commissioner cannot locate the claimant to resolve a question regarding his or her disability; or (4) the claimant "fail[s] to follow prescribed treatment which would be expected to restore [the] ability to engage in substantial gainful activity." 20 C.F.R. § 404.1594(e).

Pursuant to § 404.1594(d), the evaluator must consider whether: (1) "[s]ubstantial evidence shows that [the claimant] [is] the beneficiary of advances in medical or vocational therapy or technology (related to [the] ability to work)"; (2) "[s]ubstantial evidence shows that [the claimant] has undergone vocational therapy (related to [the] ability to work)"; (3) "[s]ubstantial evidence shows that based on new or improved diagnostic or evaluative techniques [the claimant's] impairment(s) is not as disabling as it was considered to be at the time of the most recent favorable decision"; or (4) "[s]ubstantial evidence demonstrates that any prior disability decision was in error." 20 C.F.R. § 404.1594(d). If the evaluator determines any of these enumerated exceptions applies to the claimant, the evaluator will proceed to steps five and six of the sequential processes. 20 C.F.R. § 404.1594(f)(5).

claimant exhibits medical improvement that does not increase his or her RFC. 20 C.F.R. § 404.1594(f)(5).

If the claimant exhibits medical improvement that increases his or her RFC, or if the evaluator finds that a § 404.1594(d) exception applies to the claimant, the evaluator determines at step six whether the claimant's impairments manifest as severe based upon "all . . . current impairments and the impact of those impairments on [the claimant's] ability to function." *Id.* § 404.1594(f)(6). If the claimant's impairments do not manifest as severe, the evaluator will conclude the claimant's disability ceased. *Id.* § 404.1594(f)(6).

If the claimant's impairments manifest as severe, the evaluation proceeds to the seventh step, where the evaluator assesses whether the claimant retains the ability to perform past work. *Id.* § 404.1594(f)(7). If the claimant retains the ability to perform past work, the evaluator will determine the claimant's disability ceased. *Id.* § 404.1594(f)(7).

If the claimant does not retain the ability to perform past work, the evaluator will determine at the eighth step whether the claimant can perform other work based upon the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1594(f)(8). If the claimant can perform other work, the evaluator will conclude the claimant's disability ceased. *Id.* § 404.1594(f)(8). If the claimant cannot perform other work, however, the evaluator will conclude the claimant continues to suffer a disability. *Id.* § 404.1594(f)(8).

The court must determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the proper legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The court reviews the ALJ's "'decision with deference to the factual findings and close scrutiny of the legal conclusions.'" *Parks ex rel. D.P. v. Comm'r, Social Sec. Admin.*, 783 F.3d 847, 850 (11th Cir. 2015) (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). Indeed, "an ALJ's factual findings . . . 'shall be conclusive' if supported by 'substantial evidence.'" *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citing 42 U.S.C. § 405(g)). Although the court must "scrutinize the record as a whole . . . to determine if the decision reached is reasonable . . . and supported by substantial evidence," *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted), the court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment" for that of the ALJ. *Winschel*, 631 F.3d at 1178 (citations and internal quotation marks omitted). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. . . . Substantial evidence . . . . is 'more than a mere scintilla,' . . . [and] means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek*, 587 U.S. at 103 (citations omitted). Therefore, substantial evidence exists even if the evidence preponderates against the Commissioner's decision. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

## FACTUAL AND PROCEDURAL HISTORY

The Commissioner originally found Linn disabled on July 19, 1995, due to recurrent laryngeal carcinoma, and he continued Linn's disability benefits on both July 29, 2003, and November 30, 2010. (Tr. 144-45). However, the Commissioner later found Linn's disability ceased as of June 1, 2022, and thus, he terminated Linn's benefits. (Tr. 217-42).

Linn filed a timely request for a hearing, and the ALJ held hearings on December 20, 2020, and January 3, 2023. (Tr. 98-143, 240). On February 27, 2023, the ALJ issued an opinion finding Linn's disability ceased as of June 1, 2022. (Tr. 35-52).

The ALJ found at step one of the eight-step sequential process that Linn had not engaged in substantial gainful activity through the date of the decision. (Tr. 40). Next, the ALJ determined Linn had the medically determinable impairments of status post cancer with vocal cord paralysis, obesity, cam deformity bilateral hips, degenerative disc disease, neuropathy, right carpal tunnel syndrome, carotid stenosis with stenting, hypertension, gastroesophageal reflux disease, obstructive sleep apnea, thyroid nodules, hyperlipidemia, depression, and psoriasis. (*Id.*).

At step two, the ALJ found that Linn's impairments, or combination of impairments, did not meet or medically equal any impairment for presumptive disability listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 42).

At step three, the ALJ found that medical improvement occurred as of June 1, 2022, as Linn remained cancer-free since December 2009. (Tr. 44).

At steps four and five, the ALJ determined that Linn's medical improvement related to his ability to work because his impairments no longer met or medically equaled the requirements of Listing 13.02C, covering soft tissue tumors of the head and neck, which supported the previous disability findings. (*Id.*).

At step six, the ALJ determined Linn continued to have a severe impairment or combination of impairments since June 1, 2022. (*Id.*). The ALJ characterized Linn's status post cancer with vocal cord paralysis, obesity, cam deformity bilateral hips, degenerative disc disease, neuropathy, right carpal tunnel syndrome, carotid stenosis with stenting, and hypertension as severe impairments. She characterized Linn's history of gastroesophageal reflux disease, obstructive sleep apnea, thyroid nodules, hyperlipidemia, depression, and psoriasis as non-severe impairments. (Tr. 44-45).

Based upon the impairments present since June 1, 2022, the ALJ found Linn possessed the residual functional capacity to perform

> sedentary work as defined in 20 CFR 404.1567(a) except he can occasionally climb ramps and stairs, stoop, kneel, and crouch; he should never climb ladders, ropes, or scaffolds nor should he crawl; he can occasionally reach overhead with his bilateral upper extremities; he can frequently handle and finger with his bilateral upper extremities; he can have only occasional exposure to extremes of cold, extremes of heat and humidity as well as full body vibration; he should have no exposure to hazards such as unprotected heights and hazardous machinery; and he should perform jobs that have only occasional oral communication required.

(Tr. 45).

At step seven, the ALJ found Linn had no past relevant work. (Tr. 50).

At step eight, the ALJ found that after June 1, 2022, Linn could perform a significant number of jobs in the national economy, including document preparer, table worker, and touch-up screener. (Tr. 50-51). Accordingly, the ALJ found that Linn's disability ceased as of June 1, 2022, thus ending the sequential analyses. (Tr. 51).

Linn timely requested review of the ALJ's decision. (Tr. 350-52). On September 11, 2023, the Appeals Council denied review, which deems the ALJ's decision as the Commissioner's final decision. (Tr. 1-7). On November 8, 2023, Linn filed his complaint with the court seeking review of the ALJ's decision. (Doc. 1).

## ANALYSIS

In this appeal, Linn contends the ALJ improperly considered his subjective symptoms and the vocational effects of his reported daily activities when assessing whether he experienced vocationally significant medical improvement.

> A three-part "pain standard" applies when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms. *Wilson*[ *v. Barnhart*], 284 F.3d [1219,] 1225[ (11th Cir. 2002)]. The pain standard requires evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged pain arising from that condition or a showing that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *Id.*

*Porto v. Acting Comm'r of Soc. Sec. Admin.*, 851 F. App'x 142, 148 (11th Cir. 2021). A claimant's testimony coupled with evidence that meets this standard suffice "to support a finding of disability." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citation omitted).

Social Security Ruling ("SSR") 16-3p mandates the ALJ "will consider any personal observations of the individual in terms of how consistent those observations are with the individual's statements about his or her symptoms as well as with all of the evidence in the file." SSR 16-3p, *7. An ALJ rendering findings regarding a claimant's subjective symptoms may consider a variety of factors, including: the claimant's daily activities; symptom location, duration, frequency, and intensity; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medication taken to alleviate the symptoms; and other factors concerning functional limitations and restrictions due to symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3), (4).

SSR 16-3p further explains that the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent review can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, at *10; *see also Wilson*, 284 F.3d at 1225 (If an ALJ discredits a claimant's subjective testimony, the ALJ "must articulate explicit and adequate reasons for doing so.").

Linn testified he experiences neuropathy in his hands, arms, feet, and legs, resulting in a "pins and needles" feeling or numbness. He drops items and drags his feet when he walks. The medications he takes for neuropathy make him feel drowsy, lightheaded, and dizzy. (Tr. 107-09). He sets alarms to remember to take his medications. (Tr. 114).

When he stands for more than 15 minutes, he feels pain and numbness in his lower back and hip.  (Tr. 111-12).  Due to pain and numbness in his shoulder, he experiences trouble reaching overhead.  His neck muscles strain and cramp, as doctors had to remove a large portion of his neck muscles and vocal cords to treat throat cancer in 2009 or 2010.  He constantly feels fatigued and sleepy from his medications and sleep apnea, but he cannot use a C-PAP machine because of his previous neck surgeries.  His throat hurts if he talks for a long period of time.  (Tr. 114-16).  He has taken medication for depression since 2003.  (Tr. 112).

During a typical day, Linn lies down or sits in a recliner approximately 80% of the time.  (Tr. 116).  He watches television and performs some household chores like washing dishes, loading a dishwasher, and cooking small meals.   He does not drive often, but he can drive for up to 30 minutes at a time.  He can bathe and dress himself in a t-shirt and shorts, but he sometimes experiences difficulty fastening buttons and collars.  (Tr. 110-13).

The ALJ found Linn's current medically determinable impairments could reasonably be expected to produce some of the symptoms he alleged, yet Linn's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the objective medical and other evidence. Accordingly, she found Linn's statements about his subjective symptoms affected Linn's ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence.  (Tr. 46).

The ALJ considered evidence from Linn's medical providers, including Birmingham Heart Clinic, OrthoAlabama Spine & Sports, neurologist Wesley King, M.D., primary care provider Dr. Michael Dupre at Northside Medical Associates, and Southern ENT & Sinus Center. She considered that Linn experienced no recurrence of his cancer since either December 2009 or January 2010. She reviewed Linn's obesity and incorporated the effects of the obesity into the RFC finding. She evaluated opinion evidence from Dr. Duncan, the psychological consultative examiner; Dr. Walters and Dr. Dupre, Linn's treating physicians; and Linda Duke, Ph.D., Jeannie Nunez, Psy.D., and Dr. Gregory Parker, the state agency assessors. Based on all of the evidence, including Linn's testimony at the administrative hearing, the ALJ concluded the record as a whole supported her RFC finding. (Tr. 46-50).

Linn argues the ALJ relied only upon medical records that supported her decision, while ignoring evidence that would have supported Linn's subjective complaints. However, the applicable law does not require an ALJ to "discuss every piece of evidence if the ALJ's decision is not a broad rejection and there is enough for [the court] to conclude that the ALJ considered the claimant's medical condition as a whole." *Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1277 (11th Cir. 2024) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005); *Jamison v. Bowen*, 814 F.2d 585, 590 (11th Cir. 1987)).

The evidence Linn cites does not undermine the substantial evidence supporting the ALJ's RFC finding. Linn asserts the ALJ failed to consider certain treatment notes

and opinion letters from Dr. Dupre's office.  On August 25, 2021, Linn presented to Dr. Dupre's nurse practitioner with complaints of bilateral hand pain, stiffness, numbness, and weakness that had persisted for years.  The clinical examination revealed decreased grip strength on the right and positive Phalen's test on the left.  The nurse practitioner assessed osteoarthritis in both hands and possible carpal tunnel on the left. Linn thought he could not take over-the counter NSAID's because of his other medications, but the nurse practitioner informed him he could and should do so.  Linn reported NSAID's had worked in the past.  (Tr. 942-46).

On October 19, 2021, Linn reported to the nurse practitioner for a follow-up. He stated he was doing well, but he continued to experience sleep problems.  He believed his bilateral index fingers were "catching."  He experienced increased joint pain, and he used Tylenol and Aleve.  Another provider told him he would need a hip replacement, but he wanted to put that off as long as possible.  He took around four Benadryl a night for sleep, but he wanted to try Ambien instead.  During the clinical examination, he displayed normal movement of all four extremities and normal gait and station.  The nurse practitioner assessed mild to moderate sleep apnea, but she stated Linn could not use a CPAP due to his history of neck surgery and vocal cord damage. She prescribed Ambien.  (Tr. 924-29).

The ALJ did not explicitly mention these treatment notes from Dr. Dupre's office.  Even so, the notes do not depict disabling impairments or undermine the substantial evidence supporting the ALJ's RFC finding.  Moreover, the ALJ concluded

12

neither Dr. Dupre's treating records nor the remainder of the medical evidence supported Dr. Dupre's statement that Linn is disabled, and substantial evidence supports that conclusion.  (Tr. 49).

On April 7, 2022, and August 1, 2022, Dr. Dupre wrote "To Whom it May Concern" letters stating Linn "is permanently disabled due to his longstanding medical issues following diagnosis and treatment for squamous cell carcinoma of the larynx." (Tr. 1004, 1171).  Dr. Dupre also stated Linn "has decreased exercise tolerance and occasional dyspnea and has been on disability secondary to his diminished ability to tolerate prolonged physical or strenuous activity."  (*Id.*).  The ALJ considered Dupre's letters, but she concluded they did not constitute medical opinions, as they merely expressed an opinion on the ultimate issue of disability, which is an assessment reserved to the Commissioner, and they did not describe Linn's functional limitations resulting from his conditions.  Well-established law supports that conclusion.  *See* 20 C.F.R. § 404.1513(a)(2) (defining a "medical opinion" as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions . . . ."); *id.* at § 404.1527(d)(2) ("[T]he final responsibility for deciding [a claimant's RFC] is reserved to the Commissioner."); *id.* at § 404.1546(c) ("[T]he administrative law judge . . . is responsible for assessing [a claimant's] residual functional capacity."); *Oates v. Berryhill*, No. 17-0130-MU, 2018 WL 1579475, at *8 (S.D. Ala. Mar. 30, 2018) ("The responsibility for making the residual functional capacity determination rests with the ALJ."); *Del Rio v. Berryhill*, No. 3:16-

CV-00489-RFC, 2017 WL 2656273, at *8 (W.D. Tex. June 20, 2017) ("The ALJ has the sole responsibility of determining Plaintiff's RFC . . . .").

Linn also points to additional records from OrthoAlabama Spine & Sports. On December 1, 2021, Linn reported with complaints of bilateral hip and shoulder pain. He denied receiving treatment for his hips, but he also stated another provider told him he would need bilateral hip replacements. He said he could not take NSAID's, but as previously established, other providers had told him he could take such medications. He reported constant level-seven hip pain he described as dull, sharp, stabbing, and shooting. Activities such as bending, twisting, turning, and stepping exacerbated the pain, but rest improved the pain. He reported limited range of motion and sleep disturbances, but he denied pain radiating past his knees.

As for his upper body, Linn reported bilateral shoulder pain, bilateral arm numbness when lying on either side, left arm tingling with overhead movements, locking fingers, and intermittent bilateral hand tingling. He drops things due to the hand tingling, and he experiences decreased dexterity and occasional difficulty using buttons. He carried a previous diagnosis of shoulder impingement.

The clinical examination of Linn's shoulders produced no tenderness to palpation, full range of motion, and full strength. The left hip examination was normal. In the right hip, Linn demonstrated some pressure with range of motion. In the cervical spine, he displayed midline and paraspinal tenderness, normal alignment, limited range of motion, pain on extremes of motion, normal strength, and normal sensation.

Bilateral shoulder x-rays revealed no fractures, dislocations, or other osseous abnormalities. Hip x-rays revealed bilateral cam deformity with mild arthritic progression, greater on the right than on the left. Dr. Hyde assessed cervical spinal stenosis, bilateral hip osteoarthritis, and cam deformity in the bilateral hips. Dr. Hyde ordered a cervical spine MRI and physical therapy, and he prescribed Mobic. (Tr. 854-58).

On January 12, 2022, Linn returned to OrthoAlabama Spine & Sports primarily complaining of pain in his bilateral hips, but worse in the right hip. His "heart doctor" had recently informed him he should not take any anti-inflammatory medications. Physical therapy mildly improved the pain in both his hips and shoulders. Examination of Linn's left hip revealed no swelling, ecchymosis, or obvious deformity; some mild tenderness over the groin but no palpable masses; some limitation of motion with mild pain on motion; normal strength and sensation; normal reflexes; and antalgic gait. Examination of the cervical spine produced no step-off or bruising, normal alignment, midline and paraspinal tenderness, no paraspinal spasm, limited range of motion, pain on extremes of motion, no gross motor deficits, good motor strength, intact sensation, and equal reflexes. In both shoulders, Linn displayed mild tenderness but no masses with direct palpation, good range of motion but pain on motion, normal strength, intact sensation, and normal and symmetrical reflexes. Linn received a right hip injection, which he tolerated well. Dr. Hyde assessed cervical spinal stenosis, bilateral hip

osteoarthritis, bilateral hip cam deformity, and bilateral shoulder pain. He advised Linn to continue physical therapy. (Tr. 849-53).

On March 8, 2022, Linn continued to complain of constant level-seven hip pain and weakness. Activities such as bending, twisting, and turning exacerbate the pain. He ambulates without the use of an assistive device, but he reports limited range of motion and sleep disturbance. Physical therapy did not provide significant improvement. Clinical examination of the right hip revealed no tenderness to palpation over the greater trochanter and good range of motion with pressure on internal rotation. The left hip examination revealed no swelling, ecchymosis, or obvious deformity; tenderness over the groin but no palpable masses; some limitation of motion with mild pain on motion; normal strength and sensation; equal reflexes; and antalgic gait favoring the affected side. A December 12, 2021, x-ray revealed early joint space narrowing, and a January 10, 2020, MRI revealed mild scoliosis and a small bulge at L5-S1. Dr. Hyde did not recommend hip surgery; rather, he suggested medication, activity modification, and additional injections. (Tr. 1162-65).

The ALJ discussed all these clinical notes and examination findings, including the x-ray and MRI results. She did not specifically mention either Linn's characterization of the pain as a level seven, or his statement that physical therapy provided only mild improvement. However, neither the mere existence of pain nor Linn's characterization of the pain level controls the analysis, and the ALJ concluded the record did not support the level of intensity Linn alleged for his subjective

symptoms. *See Moore,* 405 F.3d at 1213 n.6 (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)) ("To a large extent, Moore questions the ALJ's RFC determination based solely on the fact that she *has* varus leg instability and shoulder separation. However, the mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard.") (emphasis in original); *Mansfield v. Astrue*, 395 F. App'x 528, 531 (11th Cir. 2010) (diagnosis insufficient to establish disability); *Osborn v. Barnhart*, 194 F. App'x 654, 667 (11th Cir. 2006) (While a doctor's letter reflected diagnoses, "it does not indicate in any way the limitations these diagnoses placed on [the claimant's] ability to work, a requisite to a finding of disability."). Thus, those statements do not depict disabling impairments or undermine the substantial evidence supporting the ALJ's RFC finding.

Next, Linn points to a January 10, 2022, record from Dr. Thao Nguyen Tran, a rheumatologist at Southview Medical Group. Linn reported severe stiffness and pain in his hands and fingers and numbness and tingling in his hands and arms for the prior six to 12 months. He reported sometimes dropping objects from his hands, but he did not attribute that to his pain. He also reported chronic neck, hip, and back pain. He experiences stiffness in the morning that improves as the day progresses. During the clinical examination, Linn moved all his extremities well, and he displayed no swelling or tenderness to palpation. Dr. Tran agreed Linn should pursue physical therapy, and he ordered a nerve conduction study. (Tr. 867-70). The study, conducted January 20, 2022, revealed mild right carpal tunnel syndrome and mild sensory neuropathy in the

17

lower extremities. (Tr. 882). The ALJ discussed these findings from Dr. Tran. (Tr. 47).

Next, Linn points to records from Birmingham Heart Clinic. On March 23, 2021, Dr. James Trimm assessed severe carotid stenosis (Tr. 545), and on March 26, 2021, Dr. Trimm placed a stent in Linn's right carotid artery. (Tr. 579). On January 3, 2022, Dr. Flowers at Birmingham Heart Clinic reported to Dr. Dupre, Linn's primary care provider, that he treated Linn on December 15, 2021. Linn reported doing well with his cardiac symptoms, though Dr. Flowers recommended he take blood pressure medication daily and undergo a repeat carotid in three months. Linn characterized his primary problem as progressive weakness and numbness in his hands. (Tr. 960). On September 21, 2022, Linn reported he continued to experience fatigue, overall lack of energy, shortness of breath, blurred vision, headaches, and intermittent numbness in his arms and hands. (Tr. 1344).

The ALJ discussed these findings from Birmingham Heart Clinic. (Tr. 46). Moreover, as the ALJ noted, no treatment provider suggested Linn experienced any limitations as a result of a cardiac impairment. (*Id.*).

Next, Linn points to records from Southern ENT and Sinus Center. On January 10, 2022, Linn presented for a follow-up to a fine needle aspiration of a right thyroid nodule. He reported problems with fatigue and exercise tolerance secondary to the multiple head and neck procedures impacting his airway. (Tr. 982). On January 31, 2022, Dr. Walters, who treated Linn, provided the following "To Whom it May

Concern" letter:

> Please accept this letter on behalf of John Linn, Jr. regarding his longstanding medical issues following diagnosis and treatment for squamous cell carcinoma of the larynx. His medical history includes primary radiation to his glottic larynx followed by subsequent right cordectomy and radical neck dissection for an initial recurrence. A subsequent recurrence was treated with CO2 laser partial cordectomy of the left vocal fold by Dr. Carroll at UAB in January 2010. Since that time, he has been under routine surveillance and has remained with no evidence of disease (NED).

> Also, he has a multinodular goiter which is followed by serial ultrasound and ultrasound-guided fine-needle aspirations as indicated. He has persistent hoarseness and diminished vocal cord projection secondary to GERD/LPR as well as postsurgical and post XRT changes to his larynx. These changes also result in decreased exercise tolerance and occasional dyspnea. He has been on disability following treatment of his recurrent squamous cell carcinoma of the larynx secondary to his diminished ability to tolerate prolonged physical or strenuous activity.

> As you review Mr. Linn's current disability status, your consideration of his multiple medical circumstances and comorbidities affecting his ability to work is greatly appreciated.

(Tr. 981).

The ALJ considered Dr. Walter's letter but concluded it was "of limited usefulness in determining [Linn's] residual functional capacity" because it did not provide an assessment of Linn's ability to perform work activity. Even so, the ALJ afforded Dr. Walters's assessment of decreased exercise tolerance and occasional dyspnea some weight, and she considered that assessment in limiting Linn to work at the sedentary level. (Tr. 22).

In summary, either the ALJ considered the medical records Linn claims she

ignored, or the records did not depict disabling impairments or undermine the substantial evidence supporting the ALJ's RFC finding. The alleged omitted evidence consists mostly of Linn's subjective complaints of pain or other subjective symptoms. As discussed, functional impairments, not medical conditions or symptoms, govern the disability assessment, and substantial evidence supported the ALJ's decision that Linn's complaints of subjective symptoms were not consistent with the medical and other evidence.

Linn also argues the ALJ improperly considered his daily activities in evaluating his subjective complaints and assessing his RFC. The ALJ stated:

> The claimant's primary care records have consistently indicated, including in October 2022, that he was able to care for himself, did not have difficulty concentrating, remembering, or making decisions, did not have difficulty walking or climbing stairs, did not have difficulty dressing or bathing, did not have difficulty doing errands alone, and could walk without restrictions . . . . When the claimant was examined by Dr. Duncan in October 2021, he not only displayed and reported no symptoms consistent with a diagnosable mental health disorder, but he reported that a typical day for him included taking care of all of his needs without help from others, because he was by himself while his wife was at work . . . . The claimant acknowledged that he dressed, bathed, made purchases and obtained correct change, cleaned, and watched television. The claimant stated that he was physically limited and would be more limited for some time thereafter if [he] over did things, but he still reported the ability to engage in those daily activities, that are not inconsistent with the above-stated residual functional capacity for a range of sedentary work. His medical records do not document any significant medication side effects.

(Tr. 48).

Social Security regulations permit an ALJ to consider a claimant's daily activities when assessing subjective symptoms vis-à-vis the ability to work. *See* 20 C.F.R. §

404.1529(c)(3)(i).  Yet, as numerous courts have cautioned, "'participation in everyday activities of short duration' does not disqualify a claimant from disability," as "[i]t is the ability to engage in gainful employment that is the key, not whether a plaintiff can perform minor household chores or drive short distances."  *Love v. Colvin*, No. 6:15-CV-338-WMA, 2016 WL 741974, at *5 (N.D. Ala. Feb. 24, 2016) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997); *Early v. Astrue*, 481 F. Supp. 2d 1233, 1238-39 (N.D. Ala. 2007)).  Rather, an ALJ should rely upon evidence of a claimant's daily activities as a "basis to discredit a claimant's testimony when [his or] her daily activities demonstrate a higher level of functioning than her alleged disabling symptoms would allow."  *Love*, 2016 WL 741974, at *5.

Consistent with that legal guidance, the ALJ did not improperly equate Linn's limited daily activities with the ability to perform full-time work activity.  Rather, she properly assessed the consistency of Linn's activities with his testimony about his limitations by concluding Linn's activities were "not inconsistent with the above-stated residual functional capacity for a range of sedentary work."  (Tr. 48).

Even so, Linn asserts substantial evidence does not support the ALJ's decision because the ALJ did not accurately describe his activities.  Specifically, Linn points to the Function Report he submitted to the Commissioner, in which he stated he stays "in a daze" due to lack of sleep.  (Tr. 415).  His daily activities depend upon the quality of his sleep and the extent of his pain.  He tries to wash clothes or dishes when he feels good.  He takes a couple of short naps during the day.  He helps his wife cook for his

son and stepchildren, but the children and other family members perform many of the household tasks.  He can feed himself and use the toilet without any limitations.  He can bathe, care for his hair, and shave when he feels able, but does not perform these activities on a regular schedule.  He sometimes needs help with shirt collars or ties because of his arm limitations.  (Tr. 416).  He does not need reminders to perform personal care or take medication.  He can help with laundry, dishes, cooking, and yardwork when he feels good, but he cannot do so when his neck and shoulder hurt.  (Tr. 417).  He tolerates hot temperatures poorly.  He can walk and drive.  He shops for groceries and home goods one to three times a month, for thirty minutes to an hour at a time.  Other times, he uses delivery services.  He can pay bills, count change, and use a checkbook.  (Tr. 418).  His hobbies and interests include watching television.  He attends family events and church one to four times a month, but he must limit the use of his voice when he interacts with others.  (Tr. 419).

Though the ALJ did not discuss the Function Report in the section of her opinion addressing Linn's residual functional capacity, she discussed it when evaluating whether Linn suffered a severe mental impairment or combination of impairments.  (Tr. 41-42).  She did not explicitly mention Linn's qualification that he only performs certain activities when he feels good.  However, that omission does not deprive the ALJ's opinion of substantial evidentiary support.  As discussed, the ALJ did not rely solely upon her assessment of Linn's activities to support the RFC finding.  Because substantial medical evidence supported the ALJ's RFC finding, any misstatements by

the ALJ of Linn's daily activities do not result in error.  *See Byars v. Colvin*, No. 6:15-CV-00303-KOB, 2016 WL 4137981, at *11 (N.D. Ala. Aug. 4, 2016) (in discussing the claimant's pain allegations, the ALJ did not improperly omit the claimant's testimony regarding specific limitations on her daily living activities because a Function Report contradicted her testimony); *Seagle v. Colvin*, No. 2:15-CV-00538-LSC, 2016 WL 1613053, at *6 (N.D. Ala. Apr. 22, 2016) ("[E]ven without the ALJ's consideration of Plaintiff's daily activities, there was ample evidence undermining Plaintiff's credibility, as discussed above, such as Plaintiff's limited and conservative medical treatment, normal examination findings, and poor work history."); *Hunter v. Colvin*, No. 4:13-CV-0391-SLB, 2014 WL 4458887, at *9-10 (N.D. Ala. Sept. 8, 2014) (contrary to the ALJ's conclusion, the claimant's daily living activities did not undermine her subjective complaints; however, substantial evidence nevertheless buttressed the ALJ's decision because he also relied upon sufficient objective medical evidence to render his adverse credibility determination).

In summary, the ALJ properly considered Linn's complaints of subjective symptoms, reached an RFC finding supported by substantial record evidence, and properly considered Linn's daily activities.  Accordingly, the ALJ's finding that Linn's disability ceased as of June 1, 2022, enjoyed the support of applicable law and substantial evidence.  The ALJ did not err.

## CONCLUSION

For the foregoing reasons, the court **AFFIRMS** the Commissioner's decision.

The court will enter a separate final judgment.

**DONE** this 17th day of March, 2025.

HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE